JAMES DE WOLF PERRY ET ALS., APPELLANTS, *v.* WILLIAM B. DE WOLF, APPELLEE.

Where there are two Executors appointed by will, and one accepts the trust and the other renounces, and the one who accepts dies, the survivor may at any time take letters testamentary, while the chain of executor. ship remains unbroken by the appointment of an administrator.

But, previous to granting such letters testamentary, notice must be issued by the Court of Probate, to the parties interested.

It is no disqualification of an executor, that he is the executor of a prior executor, between whom and the estate of the testator there are unsettled accounts, or that he is a trustee under the will, of a large amount of real and personal estate, respecting which there are unsettled accounts, or that a law suit is depending between him and the estate of the testator, respecting the title of certain real estate, which he holds adversely to the claimants under the will of said testator.

THIS was an appeal from a decree of the Court of Probate of Bristol, granting to William B. De Wolf letters of executorship on the estate of James De Wolf. By his will, James De Wolf appointed his four sons, James De Wolf, Mark Anthony De Wolf, William Henry De Wolf, and William Bradford De Wolf, and his son-in-law, J. Prescott Hall, executors. The Will was presented for Probate December 25th, 1837, and approved January 26th, 1838 ; and the executors were required to give a joint bond for the performance of the trusts. Mark Anthony De Wolf, William Bradford De Wolf, and J. Prescott Hall offered each to give a separate bond with surety, which the Court refused to accept. On the 20th of February, 1838, William Henry De Wolf and William Bradford De Wolf appeared in Court and individually declined

serving as executors, which declination was accepted by said Court. And James De Wolf and Mark Anthony De Wolf were qualified and gave the bond required. On the 2d of December, 1839, James De Wolf was removed by the Court from his office as executor, and on the ―― day of ――――, 1851, Mark Anthony De Wolf died. On the 4th of August, 1851, William Bradford De Wolf applied for letters of executorship, which, on the same day, were ordered to be issued, upon his giving the bond required. From this decree the appellants appeal for the following reasons :

1st. The Court did not, previous to the decree, cause any notice of the application to be given to the parties known to be interested therein.

2d. That William B. De Wolf was one of the executors of the will of Mark Anthony De Wolf, the previous executor of James De Wolf, between whom and the estate of said James there were unsettled accounts of great magnitude and long standing, the settlement of which would necessarily devolve on the executor or administrator with the will annexed of the said James De Wolf.

3d. That said Mark Anthony as executor was also trustee, under the will of said James De Wolf, of a large amount of real and personal estate, respecting which there were unsettled accounts of great magnitude and long standing, the settlement of which would devolve upon the executor or administrator with the will annexed of the said James De Wolf.

4th. That said William B. De Wolf was in possession of certain real estate, formerly the property of said James De Wolf deceased, and a portion of the same devised to his executors in trust for the benefit of his children and

grand children, and which said William held adversely to said children and grand children and the trustee, denying the claims of the trustee thereto, respecting which and the title thereto a suit at law had been, and at the time of the decease of Mark A. De Wolf, the former executor and trustee, was pending and is still pending.

The appellee admitted the several facts stated in the reasons of appeal, but denied the inferences deduced from them by the appellants.

*Ames* and *Bullock*, for the appellee, contended.

I. The appellee has a legal right to be qualified as an executor, because he is the person selected by the testator, whose will the law respects, as much in the appointment of the person through whom he will dispose of his property, as in the disposition itself. At common law, any one, intellectually capable, could be an executor; and our statute only disqualifies certain persons and requires the giving of bonds. The right of the executors to qualify, upon compliance with the required conditions, is ascertained by the probate of the will; and the letters are the mere proof of his appointment and qualification. (Wms. on Ex'rs. 129, 112, 123.) And his right to qualify is not affected by renunciation. The fact that the renunciation was accepted and recorded adds no force to it. At common law, the ordinary could not accept a peremptory renunciation, nor is there any mode of cutting off the right of the executor to qualify, while the executorial chain remains unbroken by the appointment of an administrator. (Toler, pp. 42, 45. 1 Comys Digest, Tit. Administration, B. 4.) *Wankford v. Wankford*, (1 Salkeld, 307.) *Judson v. Gibbons*, (5 Wend. 224, 3 Bacon's

Abr. 43. Wms. on Ex'r. 155.) The common law has not been changed in this respect by the statute. He may assume the executorship at the death of his co-executor, and if administration be granted before his refusal to serve it is void. *Judson v. Gibbons.* (5 Wend. 224.)

II. The decree allowing him to qualify is valid, notwithstanding the want of notice.

1. Notice has been given according to the statute in the Probate of the will. No notice, except what has been given, is required by the terms of the statute. (Dig. of 1844, p. 228, sec. 15.) There is a distinction between letters testamentary and letters of administration. (Dig. of 1844, p. 224, sec. 3—p. 229, sec. 21.) The statute recognizes that the appointment of an administrator and the probate of a will appointing an executor are tantamount, and, this being so, the letter of the statute is complied with by the fact that, when the will was approved, notice was given, and the appointment of William B. De Wolf, as an executor, conclusively proved to have been made.

2. But if notice has not been given, it not being one of the enumerated cases, the Court had a discretionary power to proceed without it. The right of the executor to qualify being clear, all they had to attend to was his qualification by bond, an act on which, from its nature, their judgment was sufficient without assistance.

3. If they erred in the exercise of this discretionary power, this does not make their decree utterly void—as if they had no jurisdiction—but only empowers the Court above to exercise their discretion in the matter differently, and give the notice here which they deem should have been given below.

III. The appellee is a suitable person to be an executor. Every one may be an executor except such as are

expressly forbidden. (1 Wms. Executors, 113, 114, 116, 117, 119. 2 Wms. Executors, 898.) At common law, indebtment was no disqualification. (2 Wms. Ex'rs, 815. 12 Mass. 199.)

*Tillinghast & Bradley* for the appellants contended. The executor after declining, had no right by virtue of his appointment. The old English rule upon this subject is one way, and the rule of the civil law and and of New England the other way. The English rule was based upon reasons which do not exist under our statute. In England, the ordinary has no authority to take the refusal, and probate by one executor entitles all the executors to sue. (2 Bacon's Abr. p. 405.) Coke says, the executor who refused could yet release debts and duties, &c. and "must be named in every action for the recovery of the debts of the testator." He continued executor notwithstanding his refusal. (Comyn. Tit. Adm. B. 4.) *Wankford v. Wankford.* (1 Salkeld, 307.) By our statute, all these rules are overthrown at once. In *Judson v. Gibbons*, the remark of the Court upon this subject is a mere *obiter dictum.* By our law, after an executor has refused he cannot come in. (1 Dane Abr. c. 29, a 5.) Under the common law, the Court could not refuse the probate to the executor. (2 Bacon's Abr. p. 390.) Our system in respect to the power of a Court of Probate, is different. (Dig. of 1844, p. 234, sections 15, 16, 17, 19.) By the 22nd section, when some accept and others do not, the whole power and right is concentrated in those who do. Can language be more conclusive than this? What right has an executor, under our system, after he has once refused to accept? A refusal to accept may be in anticipation of an inability to satisfy the terms required by the Court, or by agreement among

conflicting interests, and it would be practically understood, as would be the refusal of any other appointment or office, and the same effect should be given to it as to any other.

The executor has no right by virtue of the act of the Probate Court, for it was a judicial act of which the parties in interest had no notice, and that Court acted on the impression that the law was the reverse of what it is. *Corliss v. Corliss*, (8 Verm. 387.) If there is cause for removal, he ought not to have been appointed and the notice given at the probate of the will in 1838 could not extend to his appointment in 1851. *Stearns v. Fiske*, (18 Pick. 27.) *Thayer v. Homer* (11 Met. 104.) *Conkey v. Kingman* (24 Pick. 119.)

If the decree is void for these reasons, the cause must be remanded to the Court of Probate for them to decide upon the qualifications of the appellee as executor. These domestic forums are the tribunals created by law and peculiarly fit to judge of such questions and the parties are entitled to their judgment.

GREENE, C. J., delivered the opinion of the Court.

At common law, there is no doubt that where there are two executors and one accepts the trust and the other renounces and the one who accepts dies, the survivor may take letters testamentary. The renunciation is not peremptory, and he may at any time come in and administer while the chain of executorship remains unbroken by the appointment of an administrator. (Toller 68-69.) *Judson v. Gibbins*, (5 Wend. 224; 1 Wms. Executors, 155.)

He may retain it after the death of his co-executor,

and if administration be committed to another before re-
fusal by the survivor, the administration is void, (1 Wms.
Executors 155-158.)

The reason of the common law rule is the respect,
which it feels for the will of the testator, and the duty of
carrying this will into effect.

It considers that the testator has the same right to ap-
point his executor as to dispose of his property, and his
will is as binding in the one case as in the other.

The counsel for the appellant contends, that the statute
provisions of Rhode Island render the common law in-
appropriate to this State.

By our statute the executor must give bond before he
can act and before letters testamentory can issue, the
common law requiring no security of that kind.  By our
statute the Court of Probate may for causes therein men-
tioned, remove an executor ; in England the spiritual
Court has no such authority, this jurisdiction being exer-
cised by the Court of Chancery.  (See Dig. of 1844,
p. 234, sections 15 and 19.)

And, in case the executor refuses for the space of twen-
ty days to give bond, our statute provides, the Court of
Probate may commit administration to another with the
will annexed, in like manner as where the executor re-
fuses the trust.   (Dig. of 1844, p. 234. sec. 16.)

These provisions do not, in our judgment, furnish any
indicatious of an intent in the General Assembly to
change the rule.

The causes, for which the Court of Probate may re-
move an executor, are where he is incapable of executing
the trust by reason of absence, sickness or insanity, and,
where any of these causes exist at the time of the appli-
cation for letters testamentary, we think the Court of

Probate would be justified in refusing the application. It would be absurd to grant the letters under such circumstances.

So, the requiring of the bond is intended to guard the estate and insure the faithful conduct of the executor.

The testator may fairly be presumed to have intended that his executor should not be permitted to act, unless he would give bond, or, if before probate he should have become incapable of executing the trust, he should not be permitted to qualify, or if being qualified, he should afterwards become incapable of executing the trust, that he should be removed.

The 22d section of the act in relation to the wills of real and personal estate provides, that when there are several executors and all do not qualify, those who do and the survivors of them shall have the same power as is given by the will to the whole of them. (Dig. of 1844, p. 235.)

This provision, instead of changing the common law rule, we think recognizes it and is intended to carry it into effect. The authority of the whole is given to those who qualify and the survivors of them, upon the presumption that such is the intent of the testator.

There are other statute provisions in relation to this subject, but none of them can be considered as intended to change the common law in its application to cases like the present.

We think, therefore, that William B. DeWolf is entitled to come in and qualify himself and take letters testamentary notwithstanding his renunciation of February, 1838, unless he has become incapable of executing the trust for some of the causes enumerated in the statute.

We have heard the objections which have been made

Perry, et als. *v.* De Wolf.

against Mr. DeWolf, and we think he is a fit and proper person to execute the trust.

The only reason of appeal which remains to be considered is the want of notice.

This case is not enumerated in the cases, in which notice is required to be given by the 15th section of the act establishihg Courts of Probate. (Dig. of 1844, p. 228.)

But we think it comes within the spirit of that section, and, if there were no legislation on the subject, we think notice was required upon common law principles.

For this cause the decree of the Court of Probate of Bristol must be reversed, but, as all the questions involved in the case have been fully discussed on the appeal and all the parties interested have been heard, we have thought it our duty to express our opinion upon these questions to prevent further controversy.

*Decree reversed.*